# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| OCIMUM BIOSOLUTIONS, INC.[1] ) | Case No. 11-13310 (BLS) |
| ) | |
| Debtor. ) | |
| ) | Hearing Date: November 10, 2011 @ 11:30 a.m. ET |
| ) | Objection Deadline: At the hearing |

## EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I)(A) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, AND (B) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 363 AND 364, AND (II) SCHEDULING A FINAL HEARING THEREON

Ocimum Biosolutions, Inc., a Delaware Corporation (the "Debtor"), by and through its proposed undersigned counsel, hereby files this motion ("Motion") for entry of an interim order (the "Interim Order")[2] (i) authorizing the Debtor's use of cash collateral (as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral"); (ii) providing adequate protection to the Debtor's pre-petition lender, SunTrust Bank, ("Lender"), for any diminution in value of its interest in the Cash Collateral or other pre-petition collateral; (iii) vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order; and (iv) scheduling a final hearing ("Final Hearing") to consider the relief requested in the Motion and the entry of a Final Order (as defined herein) and approving the form of notice with respect to the Final Hearing. In support of the Motion, the Debtor relies upon and incorporate by reference the Declaration of Anuradha Acharya In Support of First Day Pleadings (the "Acharaya Declaration"), filed with the Court concurrently herewith. In further support of the Motion, the

---

[1] The last four digits of the Debtor's federal tax identification number are 7707.

[2] Unless defined herein, all capitalized terms shall have the meaning ascribed to them in the Interim Order.

{P0131013}

Docket No. 16
Date 11/8/11

Debtor, by and through its undersigned counsel, respectfully represents:

**Jurisdiction and Venue**

1.  On October 17, 2011 (the "Petition Date"), the Debtor filed voluntary petition for relief under chapter 11 of the Bankruptcy Code (defined below) in this United States Bankruptcy Court for the District of Delaware (the "Court"). This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C, § 157(b)(2). Venue of these proceedings and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein are sections 105(a), 362, 363, 364, 502, 505(b), 506(a), 507(a)(8), 507(b), 541, 552(b) and 1129 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Bankruptcy Rules").[3]

**Summary of Relief**

2.  The Debtor requests entry of interim and final orders authorizing the Debtor to:

> a.  use the Cash Collateral and any other Collateral (as defined in the Interim Order) in which the Lender has an interest;
>
> b.  grant adequate protection to the Lender with respect to any diminution in the value of the Lender's interest in the Collateral, whether from the use of the Cash Collateral or the use, sale, lease, depreciation or other diminution in value of the Collateral, or as a result of the imposition of the automatic stay under section 362(a) of the Bankruptcy Code;

---

[3] Unless otherwise stated, all "Section" references are to the Bankruptcy Code, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

c.  stipulate with respect to the Financing Documents and certain of the claims, liens and security interests arising therefrom;

d.  grant the Lender replacement liens in and upon the Collateral; grant the Lender super-priority administrative claims for the diminution in value of the Collateral;

e.  grant the Lender a release of any and all claims arising from the Lender's pre-petition sweep of the Sweep Proceeds;

f.  schedule a Final Hearing on the Motion pursuant to the Court's ordinary schedule;

## Background

3.  The Debtor is operating its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee has been appointed in this Chapter 11 case.

4.  The Debtor is a wholly-owned subsidiary of Ocimum Biosolutions (India), Ltd. ("Ocimum India") of Hyderabad, India.

5.  No request for appointment of a chapter 11 trustee or examiner has been made and, as of the date hereof, no official committee has been appointed.

6.  Information regarding the Debtor's history and business operations, its capital structure and primary secured indebtedness, and the events leading up to the commencement of these chapter 11 cases can be found in the Acharaya Delaration which is incorporated herein by reference.

### A.  The Debtor's Urgent Need for Use of Cash Collateral

7.  The Debtor requires use of Cash Collateral to pay ordinary course operating expenses, including, but not limited to, payments to trade creditors and the funding of payroll, to the extent provided for in the Budget. Additionally, the Debtor requires use of the Cash Collateral to fund the payment of administrative expenses associated with this bankruptcy

proceeding including, but not limited to, U.S. Trustee fees, post-petition taxes and, to the extent provided in the Budget, professional fees.

8. As more fully set forth in the Acharaya Declaration, the Debtor experienced a severe liquidity crisis pre-bankruptcy and the Debtor's pre-petition operations were heavily dependant upon its ability to borrow from the Lender under the Financing Documents. Significantly, the Lender swept $242,010.23 from the Debtor's accounts pre-petition on September 21, 2011, which rendered the Debtor unable to meet its ongoing trade obligations.

9. Without the continued ability to use the Cash Collateral to pay budgeted operating expenses, the Debtor's business would come to a halt, severely damaging relationships with customers and eroding the value of the Debtor's assets as a going concern. As the Debtor has no access to unencumbered cash, authority to use Cash Collateral is required to fund the day-to-day expenses of the Debtor's operations, to preserve the going concern value of the Debtor's business and to administer this bankruptcy case.

10. Subsequent to filing for bankruptcy protection, the Debtor and Lender entered into negotiations regarding the financing of this bankruptcy case. These negotiations resulted in the stipulated form of the Interim Order submitted with this Motion attached hereto as Exhibit A.

**B.     Description of Terms of Cash Collateral Use[4]**

11. The Debtor has agreed to the terms contained in the Interim Order and requests this Court enter the same.

---

[4] The terms of the Debtor's proposed use of Cash Collateral is summarized in the Motion for convenience purposes only. For the complete terms of the Debtor's proposed use of Cash Collateral, see the Interim Order.

12. The following outlines the general terms and conditions under which the Lender has agreed to the Debtor's consensual use of Cash Collateral:

  a. <u>Use of Cash Collateral</u>: Subject to the terms and conditions of the Interim Order, the Debtor shall be entitled to use Cash Collateral pursuant to the Budget from and after the date of the Interim Order through the earlier of: (i) December 1, 2011, (ii) entry by the Court of a final order authorizing use of the Lender's Cash Collateral pursuant to the Motion that expressly supercedes this Order, (iii) entry by the Court of an order denying the Debtor's authorization to use Cash Collateral; (iv) failure to comply with the Budget; (v) failure of the Debtor's parent company to timely inject the capital set forth in the Budget; or (vi) at the option of the Lender, upon the occurrence of an Event of Default after notice and the expiration of a two (2) day cure period.

  b. <u>Replacement Liens</u>: The Lender is granted by the Debtor, continuing, valid, binding, enforceable and perfected liens and security interests in and on all of the Collateral, including Cash Collateral now existing and hereafter created or acquired, to the same extent, priority and enforceability held on the Collateral as of the Petition Date.

  c. <u>Super-Priority Administrative Claim</u>: As additional adequate protection, the Lender is granted an allowed first and superior priority administrative claim having priority over every other administrative and priority claim allowable under §§503 and 507 of the Bankruptcy Code.

  d. <u>No Adequate Protection Payments</u>: The Interim Order does not provide for any adequate protection payments to the Lender.

  e. <u>No Lien on Avoidance Action</u>: The Interim Order does not provide the Lender with a lien on any claims or causes of actions arising out of chapter 5 of the Bankruptcy Code.

  f. <u>Release of Claim</u>: The Interim Order provides an approval of the Debtor's release of any and all claims against the Lender arising from the Lender's pre-petition sweep of the Sweep Proceeds.

## C. Provisions that Potentially Implicate Local Rule 4001-2

13. Local Rule 4001-2 requires that all cash collateral and financing requests under section 363 and 364 of the Bankruptcy Code: (i) recite whether the proposed form of order and/or underlying cash collateral stipulation or loan agreement contain certain provisions; (ii)

identify the location of any such provision in applicable documents; and (iii) justify the inclusion of such a provision. The provisions requiring disclosure pursuant to Local Rule 4001-2, and their location in the Interim Order are as follows:

    a. <u>Cross-Collateralization (Local Rule 4001-2(a)(i)(A))</u>: Local Rule 4001-2(a)(i)(A) requires the disclosure of any provision that would grant cross-collateralization protection (other than replacement liens or other adequate protection) to the pre-petition secured creditors. **The Interim Order does not grant the Lender any liens other than the replacement lien for all Collateral that existed pre-bankruptcy to the same extent, priority and enforceability held on the Collateral as of the Petition Date. Interim Order at ¶ 9(a). This provision of the Local Rule is not implicated.**

    b. <u>Review Period (Local Rule 4001-2(a)(i)(B))</u>: Local Rule 4001-2(a)(i)(B) requires the disclosure of any provisions or findings of fact that would bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured creditor's pre-petition lien or debt or the waiver of claims against the secured creditor without first giving parties-in-interest at least 75 days notice from entry of the order and the creditors' committee, if formed, at least 60 days from the date of its formation to investigate such matters. **The Interim Order provides all parties-in-interest the later of 60 days from the entry of the Interim Order or the date upon which the Interim Order becomes final to conduct an investigation of the validity, extent, perfection and enforceability of the Lender's pre-petition liens or assert any claim against the Lender. Interim Order at ¶ 20. Additionally, the Interim Order provides any creditors' committee an automatic 30 day Review Period in the event the Review Period expires prior to the formation of such a creditors' committee. The Review Period is moderately truncated due, in large part, to the limited grant of replacement or additional liens in conjunction with the Motion. For example, the Lender's replacement lien is solely perfected to the same extent as the Lender's pre-bankruptcy lien. Additionally, the Lender is not provided any new liens on any unencumbered property that existed on the Petition Date, including avoidance actions under chapter 5 of the Bankruptcy Code.**

    c. <u>Surcharge Waiver (Local Rule 4001-2(a)(i)(C))</u>: Local Rule 4001-2(a)(i)(C) requires the disclosure of provisions that seek to waive, without notice, whatever rights the estate may have under section 506(c) of the Bankruptcy Code. **The Interim Order does not provide for any such waiver. This provision of the Local Rule is not implicated.**

d. <u>Liens on Avoidance Actions (Local Rule 4001-2(a)(i)(D))</u>: Local Rule 4001-2(a)(i)(D) requires the disclosure of provisions that grant to the pre-petition secured creditor liens on the Debtor's claims and causes of action arising under chapter 5 of the Bankruptcy Code. **The Interim Order does not provide any such liens. This provision of the Local Rule is not implicated. The Interim Order includes a release of any and all claims against Lender arising from the sweep by the Lender of $242,010.23 on or about September 21, 2011, of those Sept Proceeds including, without limitation, any causes of action pursuant to Chapter 5 of the Bankruptcy Code. That release was negotiated as a condition precedent to the Lender's agreement to provide the Debtor access to $175,000 of additional working capital and the use of cash collateral.**

e. <u>Roll-Up (Local Rule 4001-2(a)(i)(E))</u>: Local Rule 4001-2(a)(i)(E) requires the disclosure of provisions that deem pre-petition secured debt to be post-petition secured debt or that use post-petition loans from a pre-petition secured creditor to pay part or all of the secured creditor's pre-petition debt, other than as provided in section 552(b) of the Bankruptcy Code. **The Interim Order does not include any provision that roll-up, pay-down or entitle post-petition status to pre-petition secured debt. This provision of the Local Rule is not implicated.**

f. <u>Equal Treatment of Professionals (Local Rule 4001-2(a)(i)(F)</u>: Local Rule 4001-2(a)(i)(F) requires the disclosure of provisions that provide disparate treatment for the professionals retained by a creditors' committee from that provided for the professionals retained by the Debtor with respect to a professional fee carve-out. **The Interim Order does not provide for any disparate treatment between the Debtor's professionals and those of a creditors' committee with respect to any carve-out. This provision of the Local Rule is not implicated.**

g. <u>Equal Treatment of Professionals (Local Rule 4001-2(a)(i)(G)</u>: Local Rule 4001-2(a)(i)(G) requires the disclosure of any provision that primes any secured lien without the consent of the lienor. **The Interim Order does not include any provisions that prime senior lenders This provision of the Local Rule is not implicated.**

### Basis for Relief Requested

**A.    Authority to Use Cash Collateral and Provide Adequate Protection**

14.    Section 363(c)(2) of the Bankruptcy Code provides that the Debtor may not use, sell or lease cash collateral unless "(A) each entity that has an interest in such cash

collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2). The Lender has consented to the Debtor's use of the Collateral, subject to the terms set forth in the Interim Order.

15. Section 363(e) of the Bankruptcy Code provides that "on request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). The Bankruptcy Code does not define "adequate protection"; however, the Bankruptcy Code provides examples that include replacement liens. 11 U.S.C. § 361. The purpose of adequate protection is to preserve the creditors' position and to protect the secured creditor from diminution of the value of its collateral during the bankruptcy process. *In re Worldcom, Inc.*, 304 B.R. 611, 618-19 (Bankr. S.D.N.Y. 2004); *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990.

16. The Lender has consented to the adequate protection provided in the Interim Order. The provision of the adequate protection provided to the Lender is justified in order to protect the Lender from a diminution in value of the Cash Collateral. The Interim Order provides for the Lender to be granted replacement liens and super-priority administrative expense claims under section 503 and 507 of the Bankruptcy Code. These protections are adequate and necessary to protect the Lender from any diminution in the value of its interest in the Cash Collateral as a result of the use of the Cash Collateral or the imposition of the automatic stay.

17. Furthermore, as reflected in the Budget submitted with this Motion, the Debtor needs the liquidity from the use of Cash Collateral in order to conduct its post-petition operations in a manner that would minimize disruption, while preserving and maximizing the

{P0131013}

value of its assets. Without the use of Cash Collateral, the Debtor would not be able to pay its direct operating expenses, would suffer irreparable harm and its chapter 11 efforts would be jeopardized.

18. The Debtor submits that the terms of the use of Cash Collateral are fair and reasonable and have been negotiated by the parties and their respective advisors in good faith and at arm's length.

19. Accordingly, the Court should approve the Debtor's use of Cash Collateral pursuant to the terms set forth in the Interim Order.

**B.     Interim Relief**

20. Bankruptcy Rule 4001 provides that a final hearing on a motion for authorization to use Cash Collateral may not be commenced earlier than 15 days after service of the motion. If the motion so requests, however, the court may conduct a preliminary hearing before such 15 day period expires and may authorize the use of Cash Collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

21. The urgent need to preserve the Debtor's business and avoid immediate and irreparable harm to the estate, as set forth in this Motion, makes it imperative that the Debtor be authorized to use Cash Collateral pursuant to the terms set forth in the Interim Order and summarized in this Motion pending the Final Hearing. It is critical that the Debtor maintain the confidence of employees, suppliers and customers in the Debtor's ability to meet its obligations while it formulates its reorganization strategy. Continued cash availability is essential to the Debtor's ability to achieve this important aim. Denying use of Cash Collateral for the foregoing purposes would result in the immediate shut-down of the Debtor's operations, likely resulting in a piecemeal disposition of assets at prices equal to liquidation or scrap-value, and irreparably

damaging the Debtor's going concern value, their ability to maximize the value of its assets and causing substantial prejudice to the Debtor's estate and its creditors.

22. Accordingly, this Court should enter an order authorizing the Debtor's use of Cash Collateral pursuant to the terms set forth in the proposed Interim Order pending a Final Hearing and should schedule a final hearing pursuant to Bankruptcy Rule 4001.

## Notice

23. Notice of this Motion has been provided to the following parties or, in lieu thereof, to their counsel, if known: (i) the U.S. Trustee, (ii) counsel to the Prepetition Lenders, (iii) the Debtor's 20 largest unsecured creditors, (iv) counsel to Ocimum Biosolutions (India), Ltd., (v) the Office of the United States Attorney for the District of Delaware, (vi) the Securities and Exchange Commission, (vii) the Internal Revenue Service and (viii) all other parties requesting notice in these proceedings pursuant to Bankruptcy Rule 2002.

## Notice with Respect to Final Hearing

24. No trustee, examiner or statutory committee has yet been appointed in this chapter 11 case. Pursuant to Bankruptcy Rule 4001, the Debtor respectfully requests that the Court authorize it to provide notice of the Final Hearing by serving a notice of the Interim Order and a proposed Final Order, by first-class mail (or for those set up to receive electronic transmissions, by electronic transmission), upon (i) the U.S. Trustee, (ii) counsel to the Prepetition Lenders, (iii) the Debtor's 20 largest unsecured creditors, (iv) counsel to Ocimum Biosolutions (India), Ltd., (v) The Office of the United States Attorney for the District of Delaware, (vi) the Securities and Exchange Commission, (vii) the Internal Revenue Service and (viii) all other parties requesting notice in these proceedings pursuant to Bankruptcy Rule 2002.

25. The cost of mailing notice to all creditors in this chapter 11 case would be expensive, and would not, in the Debtor's view, confer any substantial benefit on the Debtor, its

estate or its creditors. Accordingly, and in light of the urgency of the relief requested, the Debtor respectfully requests that any further notice of the Final Hearing and of the relief requests, other than as provided for in this Motion, be dispensed with and waived.

## No Prior Request

26. No prior motion for the relief requested herein has been made to this or any other court.

## Conclusion

WHEREFORE, the Debtor requests entry of the attached Interim Order and the Final Order granting the relief requested herein and such other and further relief as is just.

Respectfully submitted,

Dated: Wilmington, Delaware
November 8, 2011

                                                                  */s/ Jeffrey M. Carbino*
Jeffrey M. Carbino, (No. 4062)
THORP REED & ARMSTRONG, LLP
824 N. Market Street, Suite 710
Wilmington, Delaware 19801
Telephone: (302) 250-4750
Facsimile: (302) 421-9439

PROPOSED ATTORNEYS FOR THE DEBTOR
AND DEBTOR IN POSSESSION