# EXHIBIT A

# Interim Order

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| In re: | ) | Chapter 11 |
|---|---|---|
| | ) | |
| OCIMUM BIOSOLUTIONS, INC.[1] | ) | Case No. 11-13310 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

## STIPULATION AND CONSENT ORDER AUTHORIZING DEBTOR'S INTERIM USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION IN ACCORDANCE WITH 11 U.S.C. § 363 AND FED. R. BANK. P. 4001

This Stipulation and Agreed Order (the "**Order**") is entered into as of October 17, 2011, by and between the Debtor Ocimum Biosolutions, Inc. (the "**Debtor**") and SunTrust Bank (the "**Lender**").

WHEREAS, on October 17, 2011, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code; and

WHEREAS, pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor remains in possession of its assets and has continued the operation and management of its businesses in this reorganization case; and

WHEREAS, on November 8, 2011, the Debtor filed the Motion for Interim Use of Cash Collateral and to Grant Adequate Protection in Accordance with 11 U.S.C. § 363 and Fed. R. Bank. P. 4001 (the "Motion"); and

---

[1] The last four digits of the Debtor's federal tax identification number are 7707.

WHEREAS, the Debtor and the Lender have entered into this Order authorizing the Debtor's interim use of the Lender's cash collateral; and

NOW, THEREFORE, THE PARTIES HERETO STIPULATE, ACKNOWLEDGE AND AGREE AS FOLLOWS AND THE COURT HEREBY FINDS AND DETERMINES THAT:

A. This Court has jurisdiction over the Debtor, its property wherever located and by whomsoever held, this chapter 11 case and the parties hereto. This Court has jurisdiction to hear and enter this Order pursuant to 28 U.S.C §§ 157(b) and 1334. Consideration of this Order constitutes a core proceeding as defined in 28 U.S.C. §157(b)(2).

B. The Debtor and the Lender have requested immediate entry of this Order pursuant to Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Bankruptcy Rule 4001-2 to approve the Debtor's use of cash collateral in order to permit, among other things, the preservation of collateral of the Lender and the orderly administration of the Debtor's Chapter 11 proceeding. Without such funds, the Debtor will be unable to pay necessary expenses and fund critical business operations. This Order is necessary to avoid immediate and irreparable harm to the Debtor.

C. Notice of the relief requested in the Order was provided by the Debtor to the parties that have requested notice and known creditors of the Debtor, and any other party required to be served under Local Bankruptcy Rule 2002-1. Given the nature of the relief sought in the Order, the Court concludes that sufficient and adequate notice has been given pursuant to Bankruptcy Rules 2002, 4001(b) and (d) and 9014, Local Bankruptcy Rules 2002-1 and 4001-2 and § 102(1) of the Bankruptcy Code, as required by §§ 361 and 363 of the Bankruptcy Code, and that no further notice on the relief sought herein is necessary or required.

2

D. The Debtor acknowledges, reaffirms and stipulates to the indebtedness owed by the Debtor to the Lender as of the Petition Date pursuant to the following credit accommodations and all of the written agreements, documents and instruments executed in connection with the same (collectively, the "**Financing Documents**") including, without limitation, the following documents and instruments:

1. Commercial Note dated February 20, 2009 and Agreement to Commercial Note dated February 20, 2009, as amended by the First Modification of Commercial Note and Agreement to Commercial Note dated July 1, 2009 and Commercial Note dated May 14, 2010 by the Borrower in favor of the Lender in the original principal amount of $2,250,000;

2. Commercial Note dated October 20, 2009, by the Borrower in favor of the Lender in the original principal amount of $147,302.00;

3. Commercial Note dated March 30, 2010, by the Borrower in favor of the Lender in the original principal amount of $232,850.00;

4. Commercial Note dated June 30, 2010 by the Borrower in favor of the Lender in the original principal amount of $169,462.80;

5. Commercial Note dated November 16, 2010 by the Borrower in favor of the Lender in the original principal amount of $181,470.00;

6. Commercial Note dated February 11, 2011 by the Borrower in favor of the Lender in the original principal amount of $198,194.81;

7. Visa Corporate Credit Card issued to the Borrower pursuant to the Visa Commercial Card Agreement date May 2010 as amended (the "**Credit Card**").

E. The Debtor acknowledges that the Lender has valid, binding, perfected, enforceable and non-avoidable liens on and security interests in all of the Debtor's assets and property (the "**Collateral**"), including, but without limitation, all accounts, chattel paper, deposit accounts and all cash, and other property deposited therein or otherwise credited thereto,

3

documents, equipment, fixtures, general intangibles, instruments, intellectual property, patents, inventory, investment property, letter-of-credit rights, commercial tort claims, other property, books and records pertaining to the Collateral, and all proceeds, supporting obligations and products of any and all of the foregoing Collateral, all as set forth more fully in the loan, credit and security agreements among the Debtor and the Lender thereto.

F.  The aggregate principal indebtedness outstanding and owed to the Lender pursuant to the Financing Documents, other than the Credit Card, is as of October 14, 2011, $2,571,567.72 exclusive of attorneys' fees and expenses, and pursuant to the Credit Card is as of October 17, 2011, $127,269.51 (collectively, the "**Prepetition Indebtedness**").

G.  The Lender has properly perfected its security interests in and liens on all of the Debtor's Collateral including the Debtor's accounts receivable, contract rights, general intangibles, equipment by inter alia, filing a financing statement in the appropriate jurisdiction and location.

H.  Subject to the terms of the paragraph below entitled "Limited Period for Objections to Liens and Claims," and by virtue of the foregoing, (a) all of the Prepetition Indebtedness pursuant to the Financing Documents is due and owing, is a legal, binding and enforceable obligation of the Debtor, among others, and is not subject to any offset, defense, claim, counterclaim or any other diminution of any type, kind or nature whatsoever; (b) all of the Financing Documents are valid and enforceable against the Debtor in accordance with their terms, are not subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever, and are not subject to avoidance pursuant to applicable state or federal laws; (c) the Lender's liens and security interests in, to and against all of the Collateral are valid, enforceable and properly perfected, and are not subject to avoidance under applicable state and

4

federal law; and (d) there are no existing claims, causes of action of the Debtor, breaches of contract or other liabilities, whether liquidated or unliquidated, direct or indirect, and whether arising under state or federal law (including the Bankruptcy Code) against the Lender or its affiliates, predecessors, agents, representatives, employees or attorneys, arising from the business relationships between the Debtor on the one hand and the Lender or its affiliates, predecessors, agents, representatives, employees or attorneys on the other hand.

I.  As of the Petition Date, the Debtor had on hand cash in the aggregate approximate amount of $16,500 and anticipates that it will collect additional sums and, in fact, it has collected additional sums as set forth on the budget.

J.  Prior to the Petition Date, the Lender swept various monies in proceeds from receivables from the Debtor's bank account with the Lender (the "**Swept Proceeds**").

K.  The Lender hereby consents to the Debtor's use of the (1) cash on hand, (2) proceeds of accounts receivable collected by the Debtor; and (3) return of $175,000 of the Swept Proceeds from the Lender to the Debtor, all of which constitutes cash collateral of the Lender pursuant to §363(a) of the Bankruptcy Code (the "**Cash Collateral**"), subject to the liens and security interests of the Lender, under this Order, to be used for preserving the Collateral in accordance with the budget attached hereto.

L.  The parties have further agreed that the Lender shall receive a release of any and all claims against the Lender arising from the pre-petition sweep by the Lender of the Swept Proceeds including, without limitation, any causes of action pursuant to Chapter 5 of the Bankruptcy Code.

M.  The Lender is entitled, pursuant to sections 361, 362 and 363(e) of the Bankruptcy Code, to adequate protection of its interests in the Collateral, including Cash Collateral, for

diminution in value, including without limitation, resulting from the use by the Debtor of Cash Collateral.

N. Attached hereto as **Exhibit 1** is a detailed budget (the "**Budget**") that shows weekly projected disbursements through December 1, 2011. The expenditures contained in the Budget are necessary to preserve the value of the Collateral and the Debtor's estate.

O. Good, adequate and sufficient cause has been shown to justify entry of this Order. Among other things, granting the relief set forth herein will permit the Debtor to maximize value for the benefit of creditors and properly administer the Debtor's estate.

P. The terms of this Order were negotiated in good faith and at arms-length between the Debtor and the Lender.

NOW, THEREFORE, BASED UPON THE FOREGOING STIPULATIONS, ACKNOWLEDGEMENTS AND AGREEMENTS, IT IS HEREBY ORDERED that:

1. The Motion seeking approval of this Order is GRANTED.

2. The stipulations, acknowledgements and agreements set forth above are hereby approved.

3. For purposes of this Order, "Cash Collateral" shall consist of all cash collateral as defined in section 363(a) of the Bankruptcy Code, including without limitation, all items and sums referred to in paragraph E above, in which the Lender asserts a security interest, deposits subject to setoff and all other cash proceeds arising from the sale, lease or other disposition of Collateral, now in, and hereafter coming into, the Debtor's possession.

4. Subject to the terms and conditions contained herein, the Debtor is and shall be authorized to use Cash Collateral only for purposes consistent and pursuant to the line item of

expenses set forth in the Budget. The Budget may be modified by the Debtor, only with prior written consent of the Lender.

5. Notwithstanding the foregoing, the Debtor shall not be authorized to make any payments to insiders, its parents or affiliates or related persons or entities (or for the benefit of said persons or entities), during the period covered by this Order. On a weekly basis, the Debtor shall provide the Lender with a compliance report in the same format as the spreadsheet form of the Budget, certified in writing under penalties of perjury as true and accurate by the Chief Executive Officer or Chief Financial Officer of the Debtor under the penalty of perjury, that documents the Debtor's *actual* use of cash for the prior week and cumulative *actual* cash use since the Petition Date as to each line item and category of the Budget ("**Budget Compliance Report**"). The authorization granted to the Debtor under this Order shall terminate upon the earlier of: (i) December 1, 2011, (ii) entry by the Court of a final order authorizing use of the Lender's Cash Collateral pursuant to the Motion that expressly supercedes this Order, (iii) entry by the Court of an order denying the Debtor's authorization to use Cash Collateral; (iv) failure to comply with the Budget; (v) failure of the Debtor's parent company to timely inject the capital set forth in the Budget; or (vi) at the option of the Lender, upon the occurrence of an Event of Default after notice and the expiration of a two (2) day cure period. Notwithstanding any such termination, the rights and obligations of the Debtor and the rights, claims, security interests, liens and priorities of the Lender with respect to all transactions which occurred prior to the occurrence of any termination, including, without limitation, all replacement liens granted to the Lender as adequate protection and priority claims under Bankruptcy Code Section 507(b) which are provided under this Order, shall remain unimpaired and unaffected by any termination of the Order, shall survive any such termination of the Order, and shall be binding upon the Debtor, any

and all successors-in-interest to the Debtor, including any Chapter 11 trustee or any Chapter 7 trustee, all creditors and other parties in interest, and the Debtor's estate.

6. All Cash Collateral shall be deposited in the Debtor's bank account at the Lender.

7. The Debtor's authorization to use Cash Collateral shall terminate on December 1, 2011. Termination of this Order shall only terminate the rights of the Debtor to use Cash Collateral hereunder, but shall not in any manner affect the validity, priority, enforceability or perfected status of any lien or security interest granted to the Lender.

8. Neither the Debtor nor any other party may use Cash Collateral or any proceeds of the Lender's Collateral in connection with any investigation, assertion or prosecution of claims or causes of action against the Lender, including, without limitation, any challenge, objection to, the contesting in any manner of, or the raising of any defenses to, the validity, extent, perfection, priority, or enforceability of (a) the obligations owing to the Lender or (b) any liens and claims granted to the Lender.

9. As adequate protection of the Lender's interest in the Collateral, including without limitation, Cash Collateral, for and in an aggregate amount equal to, the diminution in value of such interest from and after the Petition Date, calculated in accordance with section 506(a) of the Bankruptcy Code, the Lender shall receive the following adequate protection *nunc pro tunc* to the Petition Date:

a. <u>Replacement Liens</u>. Pursuant to §§ 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, the Lender is hereby granted by the Debtor, continuing, valid, binding, enforceable and perfected liens and security interests in and on all of the Collateral, both prepetition and postpetition, including Cash Collateral now existing and hereafter created or

acquired, to the same extent, priority and enforceability held on the Collateral as of the Petition Date.

b. <u>Super-Priority Administrative Claim</u>. Pursuant to §§ 361 and 507(b) of the Bankruptcy Code, the Lender is hereby granted by the Debtor, an allowed first and superior priority administrative claim having priority over every other administrative and priority claim allowable under §§503 and 507 of the Bankruptcy Code.

c. <u>Release of Claims Relating to Swept Proceeds</u> The Lender is hereby released and discharged from any and all claims arising from the Lender's pre-petition sweep of the Swept Proceeds including, without limitation, any causes of action pursuant to Chapter 5 of the Bankruptcy Code.

10. All agreements, rights, licenses, security interests, mortgages, deeds of trust and liens contemplated or granted by this Order are effective, attach and are perfected as of the commencement of the reorganization case without the necessity of any further filing or recording by the Lender. Notwithstanding any otherwise applicable requirements under any state or federal law, the Lender shall not be required to file financing statements or any other documents in any jurisdiction or take any other action in order to perfect their security interests and liens granted under or pursuant to this Order, provided however that nothing in this Order shall be deemed to prohibit the Lender's filing of any such documents.

11. Nothing in this Order shall in any way restrict the scope of the Lender's prepetition liens, security interests, mortgages, rights of set-off or claims with respect to the Prepetition Indebtedness or the Collateral, or the proceeds, rents, products or profits thereof, and the Lender's liens, security interests and mortgages on the Collateral and the proceeds, rents, products and profits thereof shall extend to the fullest extent permitted by Section 552(b) of the

Bankruptcy Code. Cash proceeds of the Collateral that come into the possession, custody or control of the Debtor constitute Cash Collateral.

12. The Lender may terminate the Debtor's use of Cash Collateral: (a) upon a default under the terms of this Order; (b) if the Debtor's use of cash collateral exceeds their limits set forth in the Budget; (c) failure to comply with the Budget; (d) failure of the Debtor's parent company to timely inject the capital set forth in the Budget; (e) if this Order is modified, stayed, or amended without the consent of the Lender; (f) if a claim or action is instituted, the purpose of which is to seek or obtain any relief (i) invalidating, setting aside, avoiding or subordinating, the Prepetition Indebtedness or the Lender's liens, security interests, or mortgages in the Collateral; (ii) preventing, hindering or otherwise delaying the Lender's assertion, enforcement, or realization upon any Collateral, or (iii) otherwise seeking relief against the Lender without its consent; (g) if the Debtor's bankruptcy case is converted or dismissed; or (h) if the Debtor institutes an action seeking the granting or imposition, under Section 364 of the Bankruptcy Code or otherwise, liens, security interests, or mortgages on any of the Collateral equal or superior to the Lender's interest on that property. The termination based upon these events will occur at 8:00 a.m. on the third business day after the day on which the Lender gives notice (the "Termination Notice") to the Debtor of the termination event (except for subsection (c) of this paragraph above which may occur immediately), unless such termination event is non-monetary in nature and the Debtor cures such default by 8:00 a.m. on the third business day after the day on which the Lender issued the Termination Notice.

13. Unless otherwise provided herein, the terms and conditions of this Order relating to the liens and priorities granted to the Lender herein shall be binding upon the Debtor, their creditors, all other parties-in-interest and all successors-in-interest thereof including, without

limitation, any Chapter 11 trustee that may be appointed in the reorganization case or any trustee in a case under Chapter 7 of the Bankruptcy Code into which the reorganization case may be converted. This binding effect is an integral part of the agreement evidenced hereby.

14. In addition to the foregoing protections, the Debtor shall fully comply with its obligations, and shall not breach any material representation or warranty as set forth in the Financing Documents, with respect to (a) access (upon five (5) days notice to Debtor) to the Debtor's books and records and the Collateral, which provisions shall be deemed to apply to all of the Collateral, (b) financial and other reporting, (c) inspections and audits (other than an annual accounting audit), and (d) maintenance and preservation of the Collateral, which provisions shall be deemed to apply to all of the Collateral, except that the Debtor need not comply with representations as to the absence of any proceeding such as the Debtor's bankruptcy case, or provisions requiring the payment of money to the Lender (except as required by this Order) or establishing any financial covenants. Further, the Debtor shall deliver to the Lender such financial and other information concerning the businesses and financial affairs of the Debtor as the Lender may reasonably request from time to time.

15. The Lender may at any time file a motion with this Court seeking any such additional protection as it may reasonably require with respect to the Debtor's continued use of the Lender's Cash Collateral or otherwise, including, without limitation, modification or termination of this Order or any Final Order authorizing the Debtor's continued use of Cash Collateral. Nothing herein shall prevent the Debtor or any other party-in-interest from opposing such a motion. Nothing contained herein shall or shall be deemed to constitute an admission by the Lender that its interests in the Collateral are adequately protected within the meaning of Section 361 of the Bankruptcy Code now or at some future time. The Lender and the Debtor

retain all rights available pursuant to the Bankruptcy Code or any other applicable law, including their right to seek different or additional forms of adequate protection.

16. No subsequent stay, modification, termination, failure to extend the term of or vacation of this Order shall affect, limit or modify any claim, right or lien granted hereunder to the Lender incurred pursuant to this Order or otherwise, nor shall any such stay, modification, or vacation limit, affect or modify the validity, enforceability or perfection of any security interest, mortgage, lien or priority granted or reaffirmed in connection therewith.

17. Nothing contained in this Order shall require or be deemed to require the Lender to make any loan or loans or to extend credit or other financial accommodations to or for the benefit of the Debtor.

18. In the event that the reorganization case is dismissed, converted, otherwise superseded or substantively consolidated, neither the entry of this Order nor the dismissal or conversion of the reorganization case shall affect the rights of the Lender under the Financing Documents or the terms and conditions of this Order, including the security interests and liens granted herein, and all the rights and remedies of the Lender hereunder shall be and remain in full force and effect as if the reorganization case had not been filed or the reorganization case had not been dismissed, converted or superseded.

19. This Order shall not operate to modify, alter, impair, affect, abrogate, amend, restrict or nullify any rights of the Lender with respect to any person or entity other than the Debtor, nor to release, alter, impair, affect or abrogate any debts, claims, demand, actions and causes of action in law and equity, whether known or unknown, that the Lender may have as to any person or entity other than the Debtor including, without limitation, the Guarantors. Each of the parties, including the Lender, in whatever capacity, reserves all rights, remedies and interests

that he, she or it has or have or may have under agreements, documents or circumstances other than the Financing Documents.

20. Subject to no objections being received and entry of a final order, all parties-in-interest shall have until the later of the date this Order becomes a Final Order or 60 days from the date this Order is entered (the "**Review Period**") to review the Financing Documents and any actions or conduct of the Lender and the Debtor. If, during the Review Period, such parties do not file an objection or other pleading with the Court contesting in whole or in part (a) the validity, perfection, priority and enforceability of the liens and security interests claimed by the Lender in and to the Collateral or (b) asserting any claim or cause of action against the Lender, or its agents, whether arising under applicable state or federal law, or the Bankruptcy Code, whether arising in connection with the Prepetition Indebtedness, the Financing Documents or otherwise, all such parties shall thereafter be forever barred from asserting or contesting any of the matters set forth in (a) and (b) above and the Lender shall be deemed to hold allowed, perfected, enforceable and non-avoidable secured interests in the Collateral. In the event that an Official Committee is formed after the Review Period has expired, the Review Period shall be extended, for the benefit of the Official Committee only, to the date that is thirty (30) days after the Official Committee is formed. Notwithstanding the foregoing, no challenge shall be allowed with respect to the Swept Proceeds as more fully set forth in paragraph 8(c) of this Order.

21. In light of the stipulations of the parties as set forth above, the Court finds that the Lender has acted in "good faith" in all respects within the meaning of Section 363(m) of the Bankruptcy Code and on terms as would otherwise be found in an arm's length transaction and in the event of any appeal of this Order, any cash collateral used shall, pursuant to Section 363(m) of the Bankruptcy Code, shall be final and nonappealable, unless the party to such appeal shall

have obtained a stay of this Order pursuant to the Bankruptcy Code and the applicable Bankruptcy Rules.

22. In accepting the Budget, in making decisions to release Cash Collateral and by taking any other actions pursuant to this Order, the Lender shall have no liability to any third party, Lender and such parties shall not be deemed to be in control of the operation of the Debtor or to be acting as a "responsible person" or "owner" or "operator" with respect to the operation or management of the Debtor. No third party is intended to be or shall be deemed to be a third party beneficiary of the provisions of this Order.

23. The automatic stay provisions of Section 362 of the Bankruptcy Code are hereby vacated as to the Lender to the extent necessary to implement the terms of this Order and to permit the Lender to implement the provisions hereof, including, without limitation, permitting the Lender, as appropriate, inter alia, (a) to receive and apply collections, payments or proceeds of Collateral, (b) to file any financing statements or other instruments and documents, if any, evidencing its security interests in and liens and mortgages on the Collateral and (c) to charge any fees as provided in paragraphs 6 and 9.

24. In addition to the inspection of records permitted by the Financing Documents, the Debtor shall allow the Lender to review and copy, upon prior written request with five (5) days notice, (i) all vouchers, invoices, contracts and other writings relating to any and all disbursements made or obligations incurred by the Debtor with respect to the maintenance and operation of its businesses and (ii) any and all other books and records of the Debtor pertaining to the Debtor's use of the Lender's Cash Collateral.

25. On a weekly basis (commencing on the first Monday after the date of entry of this Order), the Debtor shall also provide evidence of the invoicing of new receivables in accordance with the Budget.

26. Upon five (5) business days' prior notice by telecopy or courier, the Debtor shall permit representatives, agents and/or employees of the Lender to visit, inspect, have reasonable access to and consult with, as the case may be, (i) the Debtor's books and records, (ii) the personnel of the Debtor who are familiar with the Debtor's books and records or the information set forth therein, and (iii) such other information as the Lender may reasonably request, and shall cooperate and consult with, and provide to such representatives, agents, and/or employees all such information as they may reasonably request.

27. This Order shall be without prejudice to any further application by the Lender or the Debtor for other or further adequate protection or relief, or any rights, claims or privileges of any kind, or further use of Cash Collateral, respectively.

28. This Court shall retain jurisdiction to enforce, modify, extend or interpret this Order.

29. A final hearing on the Debtor's use of Cash Collateral shall be held by the Court on _____, 2011 at ____ a.m./p.m. in accordance with Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure.

Dated: This _ day of _____ 2011
      Wilmington, Delaware

                                                Brendan Linehan Shannon
                                                United States Bankruptcy Judge

AGREED TO:

| DLA PIPER LLP (US) | THORP REED & ARMSTRONG |
|---|---|
| _____ | _____ |
| Stuart M. Brown (#4050)<br>Cynthia Moh(#5041)<br>919 N. Market Street, 15th floor<br>Wilmington, DE 19801<br>Telephone: 302.468.5640<br>Facsimile:<br>Stuart.Brown@dlapiper.com<br>Cynthia.Moh@dlapiper.com<br><br>-and-<br><br>Richard M. Kremen<br>Jodie E. Buchman<br>6225 Smith Avenue<br>Baltimore, Maryland 21209<br>Telephone: 410.580.3000<br>Facsimile: 410.580.3001<br>Richard.kremen@dlapiper.com<br>Jodie.buchman@dlapiper.com<br><br>*Counsel to SunTrust Bank* | Jeffrey M. Carbino<br>824 N. Market Street<br>Suite 710<br>Wilmington, DE 19801<br>Telephone: 302.250.4750<br>Facsimile: 302.421.9439<br>jcarbino@thorpreed.com<br><br>*Counsel to Ocimum<br>Biosolutions, Inc.* |

# EXHIBIT 1

# Cash Collateral Budget

Cash Collateral Budget October 29 - November 30

| Description | October 29 2011 | November 5 2011 | November 12 2011 | November 19 2011 | November 26 2011 | December 3 2011 | December 10 2011 | December 17 2011 | December 24 2011 | December 31 2011 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Opening Cash | 16,500.00 | 73,182.17 | 99,612.17 | 103,159.20 | 132,016.70 | 170,209.28 | 211,293.84 | 219,976.84 | 143,684.92 | 257,371.92 | 16,500.00 |
| **CASH RECEIPTS** | | | | | | | | | | | |
| Collections of Existing A/R | | | | | 24,717.00 | | | | | | 387,198.70 |
| Collections on New Invoicing - WIP | | | | | 57,998.50 | 83,661.48 | | 54,231.00 | | | 525,960.98 |
| Collections on New Invoicing - PO's | | | | 100,000.00 | 50,000.00 | 275,000.00 | 82,350.00 | 50,000.00 | 127,687.00 | 50,000.00 | 425,000.00 |
| Fund Inflow-Sunland | | | | 75,000.00 | | | | | | | 75,000.00 |
| Total Cash Receipts | 56,682.17 | 26,430.00 | 255,268.03 | 244,134.50 | 132,715.50 | 358,661.48 | 82,350.00 | 104,231.00 | 127,687.00 | 125,000.00 | 1,513,159.68 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | |
| *Pre Petition Expenses* | | | | | | | | | | | |
| Salary | | | | | 30,522.92 | 30,522.92 | | 30,522.92 | | | 91,568.76 |
| *Post Petition Expenses* | | | | | | | | | | | |
| Salary | | | 71,000.00 | 71,000.00 | | 68,000.00 | | 68,000.00 | | 68,000.00 | 346,000.00 |
| Postage and Courier Charges | | | 2,000.00 | | 2,000.00 | | 2,000.00 | | 2,000.00 | | 8,000.00 |
| Utilities Including Electricity | | | 38,044.00 | 19,022.00 | | 38,044.00 | | | | | 95,110.00 |
| Water | | | 650.00 | 325.00 | | 650.00 | | | | | |
| Building Rent | | | 50,000.00 | 50,000.00 | | 50,000.00 | | 50,000.00 | | | 200,000.00 |
| Medical Insurance | | | | | | | | | | | |
| Telephone/Mobile Charges | | | 4,400.00 | 2,200.00 | | 4,400.00 | | | | | 11,000.00 |
| General Insurance for Assests | | | 9,667.00 | | | | 9,667.00 | | | | 19,334.00 |
| Tax Audit and others | | | | | | | 10,000.00 | | | | 10,000.00 |
| Liquid Nitrogen | | | 2,500.00 | | | 2,500.00 | | | | | 5,000.00 |
| Reagents | | | 60,000.00 | 60,000.00 | 50,000.00 | 60,000.00 | 40,000.00 | 20,000.00 | | | 290,000.00 |
| Legal Fees | | | | | | 50,000.00 | | | | | 50,000.00 |
| Gas | | | 1,460.00 | 730.00 | | 1,460.00 | | | | | 3,650.00 |
| Miscellaneous | | | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 96,000.00 |
| Total Cash Disbursements | | | 251,721.00 | 215,277.00 | 94,522.92 | 317,576.92 | 73,667.00 | 180,522.92 | 14,000.00 | 80,000.00 | 1,225,662.76 |
| Ending Cash | 73,182.17 | 99,612.17 | 103,159.20 | 132,016.70 | 170,209.28 | 211,293.84 | 219,976.84 | 143,684.92 | 257,371.92 | 302,371.92 | 303,996.92 |

Accounts Receivable

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | 387,198.70 | 433,515.03 | 490,746.51 | 417,828.48 | 627,924.98 | 672,896.48 | 389,235.00 | 431,885.00 | 417,654.00 | 289,967.00 | 387,198.70 |
| Less - collections - Existing A/R | (11,649.17) | (26,430.00) | (155,268.03) | (169,134.50) | (24,717.00) | | | | | | (387,198.70) |
| + New Invoicing - WIP | 102,998.50 | 83,661.48 | 82,350.00 | | 127,687.00 | 75,000.00 | 75,000.00 | 40,000.00 | | | 640,927.98 |
| Less - collections - WIP | (45,033.00) | | | | (57,998.50) | (83,661.48) | (82,350.00) | (54,231.00) | (127,687.00) | (75,000.00) | (525,960.98) |
| + New Invoicing - PO's | | | | 325,000.00 | 50,000.00 | | 50,000.00 | 50,000.00 | | 50,000.00 | 525,000.00 |
| Less - collections - PO's | | | | | (50,000.00) | (275,000.00) | | (50,000.00) | | (50,000.00) | (425,000.00) |
| Ending Balance | 433,515.03 | 490,746.51 | 417,828.48 | 627,924.98 | 672,896.48 | 389,235.00 | 431,885.00 | 417,654.00 | 289,967.00 | 214,967.00 | 214,967.00 |

Explanation of Accounts Receivables

Existing Account Receivables
In House projects/WIP
New Pos/Invoices