# EXHIBIT B

## Carbino Affidavit

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| OCIMUM BIOSOLUTIONS, INC.[1] | : Case No. 11-13310(BLS) |
| Debtors. | |

### AFFIDAVIT OF JEFFREY M. CARBINO

STATE OF DELAWARE   )
                    ) SS:
COUNTY OF NEW CASTLE )

Jeffrey M. Carbino, being duly sworn, deposes and says:

1. I am an attorney admitted to practice in the State of Delaware and before this Court, and I am a partner of the firm of Thorp Reed & Armstrong, LLP ("TR&A"). TR&A is a law firm with offices in Pittsburgh, Pennsylvania, Philadelphia, Pennsylvania, Wheeling, West Virginia, Princeton, New Jersey and Wilmington, Delaware. TR&A's Wilmington offices are located at 824 N. Market Street, Suite 710, Wilmington, Delaware 19801.

2. I submit this affidavit (the "Affidavit") in support of the application (the "Application") of the above-captioned debtor and debtor in possession (the "Debtor"), for an order approving the retention and employment of TR&A as its counsel in the above-captioned case *nunc pro tunc* to October 17, 2011 (the "Petition Date"), in compliance with and to provide disclosure pursuant to sections 329 and 504 of title 11 of the United States Code, §§ 101-1532 (the "Bankruptcy Code"), and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1] The last four digits of the Debtor's federal tax identification number are xx-xxx7707.

3. Unless otherwise stated in this Affidavit, I have personal knowledge of the facts hereinafter set forth. To the extent that any information disclosed herein requires amendment or modification upon TR&A's receipt of additional information or as additional creditor information becomes available, a supplemental affidavit will be submitted to the Court.

4. Subject to approval of this Court and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the guidelines established by the Office of the United States Trustee (the "Guidelines"), TR&A intends to apply for compensation for professional services rendered in connection with this chapter 11 case, plus reimbursement of actual, necessary expenses and other charges incurred by TR&A during the case. The principal professionals and paraprofessionals designated to represent the Debtor and their current standard hourly rates are as follows:

| | | |
|---|---|---|
| a. | Jeffrey M. Carbino | $485 per hour |
| b. | Gregory W. Hauswirth | $235 per hour |
| b. | Carol D. Lydon | $150 per hour |

The hourly rates set forth above are subject to periodic adjustments to reflect economic and other conditions. In addition, other attorneys and paralegals within TR&A may from time to time serve the Debtor in connection with the matters described herein.

5. The hourly rates set forth above are TR&A's standard hourly rates for work of the nature to be provided to the Debtor in this bankruptcy case. These rates are set at a level designed to compensate TR&A fairly for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. It is TR&A's policy to charge its clients in all areas of practice for all other expenses incurred in connection with the client's case. The expenses charged to clients

include, among other things, telephone and telecopier toll and other charges, regular mail and express mail charges, special or hand delivery charges, document processing, photocopying charges, travel expenses, expenses for "working meals," computerized research, and transcription costs, as well as non-ordinary overhead expenses such as secretarial and other overtime. TR&A will charge the Debtor for these expenses in a manner and at rates consistent with charges made generally to TR&A's other clients or as previously fixed by this Court. TR&A believes that it is more fair to charge these expenses to the clients incurring them than to increase the hourly rates and spread the expenses among all clients.

6. TR&A has rendered legal services to the Debtor since October 14, 2011. TR&A has performed services necessary to enable the Debtor to file for protection under chapter 11 of the Bankruptcy Code.

7. In accordance with the aforementioned fee and expense procedures, TR&A rendered legal services to the Debtor prior to the Petition Date in connection with the preparation of and commencement of this chapter 11 case. Prior to the Petition Date, the Debtor paid TR&A an initial retainer of $10,000. The entire amount of the initial retainer was drawn down prior to the Petition Date.

8. On October 15, 2011, the Debtor and Ocimum Biosolutions (India) Ltd. (its "Parent") negotiated an arms-length agreement pursuant to which the Parent agreed to wire a total of $140,000.00 to TR&A's Delaware IOLTA account (the "Agreement").

9. The Parent was represented by its own counsel, Kenneth A. Sprang. In addition to its agreement to wire the $140,000, the Parent agreed to (a) waive any claim it then had or may, in the future, have against the Debtor or its estate (other than its equity interest) and (b) provide additional funding up to the full amount of TR&A's fees and any expenses to the
{D0000078}

3

extent that the Debtor was unable to obtain cash collateral and/or DIP financing to fund the Debtor's chapter 11 case. The Parent told the Debtor that it did not have sufficient funds available as of the Petition Date to fully fund the agreed-upon retainer.

10. On or before the Petition Date, the Parent wired a payment in the amount of $30,000 to TR&A's Delaware IOLTA account. On November 5, 2011, the Parent wired an additional $60,000.00 to TR&A's Delaware IOLTA account. The Parent agreed to wire an additional $50,000.00 to TR&A's Delaware IOLTA account on or before November 15, 2011 (collectively, the "Retainer")..

11. In the Application, the Debtor proposes that the Retainer amounts currently held and to be paid to TR&A be treated as an evergreen retainer to be held by TR&A as security throughout this chapter 11 case until TR&A's fees and expenses are awarded by final order and payable to TR&A. An accounting summary of payments made to TR&A is attached hereto as Exhibit 3.

12. In preparing this Affidavit, we used a set of procedures established by TR&A to ensure compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules regarding retention of professionals by a debtor under the Bankruptcy Code.

13. In that regard, TR&A requested and obtained from the Debtor a list of the names of entities who may be parties in interest in this chapter 11 case, including, *inter alia*, secured creditors, the largest unsecured creditors, equity interest holders, and the directors and officers of the Debtor (the "Potential Parties-in-Interest").

14. TR&A maintains and systematically updates its conflict check system in the regular course of its business, and it is the regular practice of TR&A to make and maintain these records. It is the policy of TR&A that no new matter may be accepted or opened within the firm


without completing and submitting to those charged with maintaining the conflict check system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the matter, and the related and adverse parties. Accordingly, the database is updated for every new matter undertaken by TR&A. The scope of the system is a function of the completeness and accuracy of the information submitted by the attorney opening a new matter.

15. Insofar as I have been able to ascertain, neither I, TR&A, nor any partner, senior counsel or associate of TR&A has in the past represented the Debtor's largest creditors, equity interest holders, or any Potential Party-in-Interest, except as hereinafter set forth.

16. Through the procedures set forth above, TR&A has determined that it has in the past represented, currently represents, and/or may in the future represent, in matters wholly unrelated to this case, certain Potential Parties-in-Interest, including, without limitation, those entities set forth on Exhibit 1 attached hereto who are current clients or are affiliates thereof, and those entities or affiliates thereof set forth on Exhibit 2 attached hereto who have been represented by TR&A within the last five (5) years. I do not believe that any single matter is a major engagement that would involve either the billing of fees in excess of one-half of one percent (.5%) of TR&A's annual fees billed, or that, in the aggregate for any affiliated group of entities, exceeds one percent (1%) of TR&A's annual fees billed. In any event, TR&A will not represent any of the foregoing claimants or any potential Party-in-Interest in any facet of the Debtor's case.

17. I do not believe that there is any connection or interest (as such terms are used in section 101(14)(C) of the Bankruptcy Code and Bankruptcy Rule 2014(a)) between TR&A and (i) the United States Trustee or any person employed by the Office of the United States Trustee, or (ii) any counsel, accountants, financial consultants, and investment bankers who represent or may represent claimants or other parties in interest in these cases. In addition, as part of its practice,

TR&A appears in cases, proceedings, and transactions involving many different attorneys, co-counsel, accountants, financial consultants, and investment bankers, some of which now or may in the future represent claimants and parties in interest in this case. TR&A has not and will not represent any such entities in relation to the Debtor and this chapter 11 case nor have any relationship with any such entities that would be adverse to the Debtor or its estate in the matters upon which TR&A is to be employed.

18. Except as set forth herein, and based upon the information available to me, neither I, TR&A, nor any partner, senior counsel or associate thereof, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtor or this estate in the matters upon which TR&A is to be employed. Based upon the information available to me, I believe that TR&A is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

19. No promises have been received by TR&A, nor by any partner, senior counsel or associate thereof, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines, and the engagement letter, dated October 16, 2011. TR&A has no agreement with any other entity to share with such entity any compensation received by TR&A.

Dated: November __, 2011
      Wilmington, Delaware

_____
Jeffrey M. Carbino (Del. No. 4062)

SWORN TO AND SUBSCRIBED before
me this 11th day of November, 2011.

_____
Notary Public
My Commission Expires:

SUSAN MARIE AMBROSE
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires Sept. 22, 2013

{D0000078}

## Exhibit 1[1] - Current Clients[2]

| Searched Party | Description of Contact with Searched Party |
|---|---|
| AT&T | Thorp Reed currently represents and has in the past represented AT&T and affiliated entities in matters entirely unrelated to the Debtor and this bankruptcy case. Thorp Reed will not represent AT&T or its affiliated entities with respect to any matters related to this bankruptcy case. |
| FedEx | Thorp Reed currently represents and has in the past represented FedEx and affiliated entities in matters entirely unrelated to the Debtor and this bankruptcy case. Thorp Reed will not represent FedEx or its affiliated entities with respect to any matters related to this bankruptcy case. |

---

[1] Parties that are both current clients and former clients of TR&A are only listed on Exhibit 1 - Current Clients.

[2] Due to the similarity of names of certain entities, TR&A was not able to determine if all entities listed herein are actually affiliates of current clients. However, out of an abundance of caution, TR&A has listed those entities that it reasonably believes may be affiliates of current clients.

# Exhibit 2 - Former Clients[1]

| Searched Party | Description of Contact with Searched Party |
|---|---|
| Frank Parsons, Inc. | Thorp Reed formerly represented Frank Parsons, Inc. in matters entirely unrelated to this bankruptcy case. |

---

[1] Due to the similarity of names of certain entities, TR&A was not able to determine if all entities listed herein are actually affiliates of former clients. However, out of an abundance of caution, TR&A has listed those entities that it reasonably believes maybe affiliates of former clients.

## Exhibit 3 - Accounting Summary of Payments

| Date | Transaction | Amount | Retainer Balance |
|---|---|---|---|
| 10/14/11 | Initial retainer received by TR&A via wire transfer from the Debtor | $10,000 | $10,000.00 |
| 10/16/11 | Initial retainer amount drawn down based on restructuring services performed from October 14, 2011 through the filing of the petitions on October 17, 2011. | ($10,000) | $0.00 |
| 11/4/11 | Supplemental retainer received by TR&A via wire transfer from Parent | $60,000 | $60,000 |
| 11/15/11 | Additional supplemental retainer expected to be received by TR&A via wire transfer from the Parent | $50,000 | $110,000 |