**EXHIBIT 1**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| OCIMUM BIOSOLUTIONS, INC., | Case No. 11-13310 (BLS) |
| Debtor. | |

## FINAL AGREEMENT AND CONSENT ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION IN ACCORDANCE WITH 11 U.S.C. § 363 AND FED. R. BANK. P. 4001

Following the filing of the Debtor's Emergency Motion for Final Use of Cash Collateral and to Grant Adequate Protection in Accordance with 11 U.S.C. § 363 and Fed. R. Bank. P. 4001 (the "**Motion**") filed by Ocimum Biosolutions, Inc., debtor and debtor-in-possession (the "**Debtor**"), the Debtor, SunTrust Bank (the "**Senior Lender**") and Kubera Cross-Border Fund, L.P. (the "**Junior Lender**") (collectively, the Senior Lender and the Junior Lender shall sometimes be referred to as the "**Lenders**") have reached agreement concerning the authorization of the Debtor to use the Cash Collateral (as defined below) and grant adequate protection liens.

The Debtor and the Lenders hereby STIPULATE AND AGREE as follows:

A.  The Debtor filed its petition for relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") on October 17, 2011 (the "**Petition Date**"). Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor remains in possession of its assets and has continued the operation and management of its business in this reorganization case.

B.  The Motion was filed on November ___, 2011. The Debtor has provided actual notice by mail of the terms of the Motion and the relief requested to all entities claiming an interest in the collateral and cash collateral affected by the Motion including (a) the twenty (20)

largest unsecured creditors for the Debtor, (b) the Office of the United States Trustee, (c) the Internal Revenue Service, (d) counsel for the Lenders and (e) parties requesting notice and other parties-in-interest in this matter. Consequently, the Court concludes that (a) adequate notice of the Motion and an opportunity for a hearing have been given in accordance with the provisions of Sections 102, 105, 361 and 363 of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, (b) the Lenders and the Debtor have agreed to the terms of this Final Agreement and Consent Order Authorizing Debtor's Use Of Cash Collateral And Granting Adequate Protection in Accordance with 11 U.S.C. § 363 and Fed. R. Bank. P. 4001 (the "**Final Order**") pursuant to Fed. R. Bankr. P. 4001(d) as a resolution of the issues raised by the Motion, and (c) no further notice relating to this proceeding is necessary or required.

C. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G), (M), and (O), involving matters concerning the use of cash collateral under Section 363 of the Bankruptcy Code. Venue is proper in this district pursuant to 28 U.S.C. § 1408.

D. The Senior Lender is the Debtor's secured lender pursuant to the terms and conditions of the Senior Financing Documents (as such term is defined below) with the power to initiate, conduct, or otherwise prosecute the enforcement of the Senior Lender's rights and remedies with respect to the Debtor in accordance with the Senior Financing Documents and applicable law. All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Senior Financing Documents.

E. The Debtor acknowledges, reaffirms and stipulates to the indebtedness owed by the Debtor to the Senior Lender as of the Petition Date pursuant to the following credit accommodations and all of the written agreements, documents and instruments executed in

connection with the same (collectively, the "**Senior Financing Documents**") including, without limitation, the following documents and instruments:

1. Commercial Note dated February 20, 2009 and Agreement to Commercial Note dated February 20, 2009, as amended by the First Modification of Commercial Note and Agreement to Commercial Note dated July 1, 2009 and Commercial Note dated May 14, 2010 by the Debtor in favor of the Senior Lender in the original principal amount of $2,250,000;

2. Commercial Note dated October 20, 2009, by the Debtor in favor of the Senior Lender in the original principal amount of $147,302.00;

3. Commercial Note dated March 30, 2010, by the Debtor in favor of the Senior Lender in the original principal amount of $232,850.00;

4. Commercial Note dated June 30, 2010 by the Debtor in favor of the Senior Lender in the original principal amount of $169,462.80;

5. Commercial Note dated November 16, 2010 by the Debtor in favor of the Senior Lender in the original principal amount of $181,470.00;

6. Commercial Note dated February 11, 2011 by the Debtor in favor of the Senior Lender in the original principal amount of $198,194.81;

7. Visa Corporate Credit Card issued to the Debtor pursuant to the Visa Commercial Card Agreement date May 2010 as amended (the "**Credit Card**");

8. Security agreement dated February 20, 2009 entered into by Debtor in favor of Senior Lender (the "**Senior Security Agreement**").

F. The Debtor acknowledges, reaffirms and stipulates to the indebtedness owed by the Debtor to the Junior Lender as of the Petition Date pursuant to the following credit accommodations and all of the written agreements, documents and instruments executed in connection with the same (collectively, the "**Junior Financing Documents**") (collectively, the Senior Financing Documents and the Junior Financing Documents shall be referred to as the

"**Financing Documents**") including, without limitation, the following documents and instruments each dated December 6, 2010: the Loan Agreement pursuant to which the Junior Lender extended a loan to the Debtor in the original principal amount of $2,500,000, the Note executed by the Debtor in favor of the Junior Lender and evidencing such loan, and the Security Agreement entered into by the Debtor in favor of the Junior Lender (the "**Junior Security Agreement**").

G. The Debtor and the Lenders acknowledge, reaffirm, and stipulate that they are parties to a Subordination Agreement, dated as of December 6, 2010 (the "**Subordination Agreement**"), pursuant to which the parties agreed that the Junior Lender's right to repayment is subordinate in all respects to the repayment of all indebtedness owed by the Debtor to the Senior Lender not exceeding a principal amount of $3,000,000.

H. The Debtor acknowledges that the Senior Lender has valid, binding, perfected, enforceable and non-avoidable liens on and security interests in all of the Debtor's assets and property (the "**Senior Collateral**"), including, but without limitation, all accounts, chattel paper, deposit accounts and all cash, and other property deposited therein or otherwise credited thereto, documents, equipment, fixtures, general intangibles, instruments, intellectual property, patents, inventory, investment property, letter-of-credit rights, commercial tort claims, other property, books and records pertaining to the Senior Collateral, and all proceeds, supporting obligations and products of any and all of the foregoing Senior Collateral, all as set forth more fully in the loan, credit and security agreements among the Debtor and the Senior Lender thereto.

I. The Debtor acknowledges that the Junior Lender has valid, binding, perfected, enforceable, and non-avoidable liens on and security interests in all personal property of the Debtor, other than certain Excluded Assets (as defined in the Junior Security Agreement) (the

"**Junior Collateral**") (collectively the Senior Collateral and the Junior Collateral shall sometimes be referred to as the "**Collateral**"), including, without limitation, all accounts, chattel paper, deposit accounts, documents, general intangibles, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, supporting obligations, and all proceeds and products of the foregoing Junior Collateral, all as set forth more fully in the Junior Security Agreement.

J. The aggregate principal indebtedness outstanding and owed to the Senior Lender pursuant to the Senior Financing Documents, other than the Credit Card, is as of October 14, 2011, $2,571,567.72 exclusive of attorneys' fees and expenses, and pursuant to the Credit Card is as of October 17, 2011, $127,269.51 (collectively, the "**Senior Prepetition Indebtedness**").

K. The Debtor acknowledges that the aggregate principal indebtedness outstanding and owed to the Junior Lender pursuant to the Junior Financing Documents, is, as of the Petition Date, approximately $2,812,500.00, exclusive of attorneys' fees and expenses and other unliquidated amounts which are or may be payable under the Junior Financing Documents (collectively, the "**Junior Prepetition Indebtedness**") (collectively, the Senior Prepetition Indebtedness and the Junior Prepetition Indebtedness shall sometimes be referred to as the "**Prepetition Indebtedness**").

L. The Debtor acknowledges that the Senior Lender has properly perfected its security interests in and liens on all of the Debtor's Collateral including the Debtor's accounts receivable, contract rights, general intangibles, and equipment by inter alia, filing a financing statement in the appropriate jurisdiction and location. The Debtor further acknowledges that the Junior Lender has properly perfected its security interests in and liens on all of the Debtor's Junior Collateral including the Debtor's accounts receivable, contract rights, general intangibles,

and equipment by <u>inter alia</u>, filing a financing statement in the appropriate jurisdiction and location.

M.   By virtue of the foregoing and subject to paragraph 18 below, the Lenders assert and the Debtor acknowledges that, (a) all of the Prepetition Indebtedness pursuant to the Financing Documents is due and owing, is a legal, binding and enforceable obligation of the Debtor, among others, and is not subject to any offset, defense, claim, counterclaim or any other diminution of any type, kind or nature whatsoever; (b) all of the Financing Documents are valid and enforceable against the Debtor in accordance with their terms, are not subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever, and are not subject to avoidance pursuant to applicable state or federal laws; (c) the Lenders' liens and security interests in, to and against all of the Prepetition Collateral are valid, enforceable and properly perfected, and are not subject to avoidance under applicable state and federal law; and (d) there are no existing claims, causes of action of the Debtor, breaches of contract or other liabilities, whether liquidated or unliquidated, direct or indirect, and whether arising under state or federal law (including the Bankruptcy Code) against the Lenders or their affiliates, predecessors, agents, representatives, employees or attorneys, arising from the business relationships between the Debtor on the one hand and the Lenders or their affiliates, predecessors, agents, representatives, employees or attorneys on the other hand.

N.   As of the Petition Date, the Debtor had on hand cash in the aggregate approximate amount of $16,500.00 and anticipates that it will collect additional sums.

O.   Prior to the Petition Date, the Senior Lender swept various monies in proceeds from receivables from the Debtor's bank account with the Senior Lender (the "**Swept Proceeds**").

- 6 -

EAST\47322555.1

P. The Lenders hereby consent to the Debtor's use of the (1) cash on hand, (2) proceeds of accounts receivable collected by the Debtor; and (3) return of $175,000 of the Swept Proceeds from the Lender to the Debtor, all of which constitutes cash collateral pursuant to §363(a) of the Bankruptcy Code (the "**Cash Collateral**"), subject to the liens and security interests of the Lenders, under this Order, to be used for preserving the Collateral in accordance with the budget attached hereto.

Q. The parties have further agreed that the Senior Lender shall receive a release of any and all claims against the Senior Lender arising from the pre-petition sweep by the Senior Lender of the Swept Proceeds including, without limitation, any causes of action pursuant to Chapter 5 of the Bankruptcy Code.

R. The Lenders are entitled, pursuant to sections 361, 362 and 363(e) of the Bankruptcy Code, to adequate protection of their respective interests in the Collateral, including Cash Collateral, for the diminution in value resulting from the use by the Debtor of Cash Collateral.

S. Attached hereto as **Exhibit A** is a detailed budget (the "**Budget**") that shows weekly projected disbursements through January 31, 2012. The expenditures contained in the Budget are necessary to preserve the value of the Collateral and the Debtor's estate.

T. Good cause has been shown for the entry of this Final Order. Among other things, entry of this Final Order will minimize the disruption of the Debtor's existing business and is in the best interests of the Debtor, its creditors and other parties-in-interest.

U. The terms of this Order were negotiated in good faith and at arms-length between the Debtor and the Lenders.

Based upon the foregoing stipulations of the parties which are incorporated by reference into this Final Order, and following a hearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. The Debtor is authorized to use Cash Collateral in the amounts and for the purposes set forth in the Budget for the period from December 1, 2011 through and including January 31, 2012, only for purposes consistent and pursuant to the line item of expenses set forth in the Budget. The Budget may be modified by the Debtor, only with prior written consent of the Senior Lender.

2. Notwithstanding the foregoing, the Debtor shall not be authorized to make any payments to insiders, its parents or affiliates or related persons or entities (or for the benefit of said persons or entities), during the period covered by this Order. On a weekly basis, the Debtor shall provide the Lenders with a compliance report in the same format as the spreadsheet form of the Budget, certified in writing under penalties of perjury as true and accurate by the Chief Executive Officer or Chief Financial Officer of the Debtor, that documents the Debtor's *actual* use of cash for the prior week and cumulative *actual* cash use since the Petition Date as to each line item and category of the Budget ("**Budget Compliance Report**"). The authorization granted to the Debtor under this Order shall terminate upon the earlier of: (i) January 31, 2012, (ii) entry by the Court of an order denying the Debtor's authorization to use Cash Collateral; (iii) failure to comply with the Budget; (iv) failure of the Debtor's parent company to timely inject the capital set forth in the Budget; or (v) at the option of the Senior Lender, upon the occurrence of an Event of Default after notice and the expiration of a two (2) day cure period. Notwithstanding any such termination, the rights and obligations of the Debtor and the rights, claims, security interests, liens and priorities of the Lenders with respect to all transactions which occurred prior

to the occurrence of any termination, including, without limitation, all replacement liens granted to the Lenders as adequate protection and the priority claims granted to Senior Lender under Bankruptcy Code Section 507(b) which are provided in this Order, shall remain unimpaired and unaffected by any termination of the Order, shall survive any such termination of the Order, and shall be binding upon the Debtor, any and all successors-in-interest to the Debtor, including any Chapter 11 trustee or any Chapter 7 trustee, all creditors and other parties in interest, and the Debtor's estate.

3. All Cash Collateral shall be deposited in the Debtor's bank account at the Senior Lender.

4. The Debtor's authorization to use Cash Collateral shall terminate on January 31, 2012. Termination of this Final Order shall only terminate the rights of the Debtor to use Cash Collateral hereunder, but shall not in any manner affect the validity, priority, enforceability or perfected status of any lien or security interest granted to the Lenders.

5. Neither the Debtor nor any other party may use Cash Collateral or any proceeds of the Lenders' Collateral in connection with any investigation, assertion or prosecution of claims or causes of action against the Lenders, including, without limitation, any challenge, objection to, the contesting in any manner of, or the raising of any defenses to, the validity, extent, perfection, priority, or enforceability of (a) the obligations owing to the Lenders or (b) any liens and claims granted to the Lender.

6. As adequate protection of the Senior Lender's interest in the Collateral, including without limitation, Cash Collateral, for and in an aggregate amount equal to, the diminution in value of such interest from and after the Petition Date, calculated in accordance with section

506(a) of the Bankruptcy Code, the Senior Lender shall receive the following adequate protection *nunc pro tunc* to the Petition Date:

    a.    <u>Senior Replacement Liens</u>. Pursuant to §§ 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, the Debtor hereby grants the Senior Lender, continuing, valid, binding, enforceable and perfected liens and security interests in and on all of the Collateral, both prepetition and postpetition, including Cash Collateral now existing and hereafter created or acquired, to the same extent, priority and enforceability held on the Collateral as of the Petition Date (the "**Senior Replacement Lien**").

    b.    <u>Super-Priority Administrative Claim</u>. Pursuant to §§ 361 and 507(b) of the Bankruptcy Code, the Senior Lender is hereby granted by the Debtor, an allowed first and superior priority administrative claim having priority over every other administrative and priority claim allowable under §§503 and 507 of the Bankruptcy Code.

    c.    <u>Release of Claims Relating to Swept Proceeds.</u> The Lender is hereby released and discharged from any and all claims arising from the Senior Lender's pre-petition sweep of the Swept Proceeds including, without limitation, any causes of action pursuant to Chapter 5 of the Bankruptcy Code.

    7.    As adequate protection of the Junior Lender's Interest in the Junior Collateral, including, without limitation, Cash Collateral, for and in an aggregate amount equal to the diminution in value of such interest from and after the Petition Date, calculated in accordance with section 506(a) of the Bankruptcy Code, the Junior Lender shall receive the following adequate protection *nunc pro tunc* to the Petition Date:

    a.    <u>Junior Replacement Liens</u>. Pursuant to §§ 361(2), 362, 363(c)(2), and 363(e) of the Bankruptcy Code, the Debtor hereby grants the Junior Lender continuing, valid, binding,

enforceable and perfected liens and security interests in and on all of the Collateral, both prepetition and postpetition, including Cash Collateral now existing and hereafter created or acquired, to the same extent, priority and enforceability held on the Collateral as of the Petition Date (the "**Junior Replacement Lien**"). The Junior Replacement Liens granted pursuant to this Final Order shall be entitled to the same rights, priorities, benefits and protections granted to the Senior Replacement Liens under this Final Order, except that the Junior Replacement Liens shall be subordinate for all purposes to the Senior Lender's Liens (under the Senior Financing Documents) and the Senior Lender's Replacement Liens and subject in right of payment to prior payment in full of the indebtedness due Senior Lender pursuant to the the Senior Financing Documents and/or this Final Order.

8. All agreements, rights, licenses, security interests, mortgages, deeds of trust and liens contemplated or granted by this Final Order are effective, attach and are perfected as of the Petition Date without the necessity of any further filing or recording by the Lenders. Notwithstanding any otherwise applicable requirements under any state or federal law, the Lenders shall not be required to file financing statements or any other documents in any jurisdiction or take any other action in order to perfect their security interests and liens granted under or pursuant to this Final Order, provided however that nothing in this Final Order shall be deemed to prohibit the Lenders' filing of any such documents.

9. Nothing in this Final Order shall in any way restrict the scope of the Lenders' prepetition liens, security interests, mortgages, rights of set-off or claims with respect to the Prepetition Indebtedness or the Collateral, or the proceeds, rents, products or profits thereof, and the Lenders' liens, security interests and mortgages on the Collateral and the proceeds, rents, products and profits thereof shall extend to the fullest extent permitted by section 552(b) of the

- 11 -

Bankruptcy Code. Cash proceeds of the Collateral that come into the possession, custody or control of the Debtor constitute Cash Collateral. Notwithstanding anything to the contrary herein, nothing in this Final Order shall affect, impair or otherwise prejudice any rights that the Debtor's landlords may have or have the effect of encumbering, pledging, or collateralizing the leasehold interests of the Debtor with respect to premises owned by such landlord to the extent otherwise prohibited under the terms of the applicable lease with such landlord.

10. The Senior Lender may terminate the Debtor's use of Cash Collateral upon the occurrence of any of the following: (a) upon a default under the terms of this Final Order; (b) if the Debtor's use of Cash Collateral exceeds the limits set forth in the Budget; (c) if the Debtor fails to comply with the Budget; (d) if the Debtor's parent company fails to timely inject the capital set forth in the Budget; (e) if this Final Order is modified, stayed, or amended without the consent of the Senior Lender; (f) if a claim or action is instituted, the purpose of which is to seek or obtain any relief (i) invalidating, setting aside, avoiding or subordinating, the Prepetition Indebtedness or the Senior Lender's liens, security interests, or mortgages in the Collateral; (ii) preventing, hindering or otherwise delaying the Senior Lender's assertion, enforcement, or realization upon any Collateral, or (iii) otherwise seeking relief against the Senior Lender without its consent; (g) if the Debtor's bankruptcy case is converted or dismissed; or (h) if the Debtor institutes an action seeking the granting or imposition, under Section 364 of the Bankruptcy Code or otherwise, liens, security interests, or mortgages on any of the Collateral equal or superior to the Lenders' interest on that property (each of the foregoing, an "**Event of Default**"). The termination based upon these events will occur at 8:00 a.m. on the third business day after the day on which the Lender gives written notice (the "**Termination Notice**") to the Debtor, the United States Trustee, and any subsequently appointed Official Committee (if any) of the

termination event (except for subsection (c) of this paragraph, the occurrence of which will result in the immediate termination of the Debtor's authorization to use Cash Collateral), unless such termination event is non-monetary in nature and the Debtor cures such Event of Default by 8:00 a.m. on the third business day after the day on which the Lender issued the Termination Notice.

11. Unless otherwise provided herein, the terms and conditions of this Final Order relating to the liens and priorities granted to the Lenders herein shall be binding upon the Debtor, their creditors, and all other parties-in-interest and all successors-in-interest thereof including, without limitation, any Chapter 11 trustee that may be appointed in the reorganization case or any trustee in a case under Chapter 7 of the Bankruptcy Code into which the reorganization case may be converted. This binding effect is an integral part of the agreement evidenced hereby.

12. In addition to the foregoing protections, the Debtor shall fully comply with its obligations, and shall not breach any material representation or warranty as set forth in the Financing Documents, with respect to (a) access (upon five (5) days written notice to Debtor) to the Debtor's books and records and the Collateral, which provisions shall be deemed to apply to all of the Collateral, (b) financial and other reporting, (c) inspections and audits (other than an annual accounting audit), and (d) maintenance and preservation of the Collateral, which provisions shall be deemed to apply to all of the Collateral, except that the Debtor need not comply with representations as to the absence of any proceeding such as the Debtor's bankruptcy case, or provisions requiring the payment of money to the Lenders (except as required by this Final Order) or establishing any financial covenants. Further, the Debtor shall deliver to the Lenders such financial and other information concerning the businesses and financial affairs of the Debtor as the Lenders may reasonably request from time to time.

13. Either of the Lenders may at any time file a motion with this Court seeking such additional protection as it may reasonably require with respect to the Debtor's continued use of the Cash Collateral or otherwise, including, without limitation, modification or termination of this Final Order authorizing the Debtor's continued use of Cash Collateral. Nothing herein shall prevent the Debtor or any other party-in-interest from opposing such a motion. Nothing contained herein shall or shall be deemed to constitute an admission by either of the Lenders that its interests in the Collateral are adequately protected within the meaning of section 361 of the Bankruptcy Code now or at some future time. Lenders and the Debtor retain all rights available pursuant to the Bankruptcy Code or any other applicable law, including their right to seek different or additional forms of adequate protection.

14. No subsequent stay, modification, termination, failure to extend the term of or vacation of this Final Order shall affect, limit or modify any claim, right or lien granted hereunder to the Lenders incurred pursuant to this Final Order or otherwise, nor shall any such stay, modification, or vacation limit, affect or modify the validity, enforceability or perfection of any security interest, mortgage, lien or priority granted or reaffirmed in connection therewith.

15. Nothing contained in this Final Order shall require or be deemed to require the Lenders to make any loan or loans or to extend credit or other financial accommodations to or for the benefit of the Debtor.

16. In the event that the Debtor's reorganization case is dismissed, converted, otherwise superseded or substantively consolidated, neither the entry of this Final Order nor the dismissal or conversion of the reorganization case shall affect the rights of the Lenders under the Financing Documents or the terms and conditions of this Final Order, including the security

interests and liens granted herein, and all the rights and remedies of the Lenders hereunder shall be and remain in full force and effect.

18. This Final Order shall not operate to modify, alter, impair, affect, abrogate, amend, restrict or nullify any rights of the Lenders with respect to any person or entity other than the Debtor, nor to release, alter, impair, affect or abrogate any debts, claims, demand, actions and causes of action in law and equity, whether known or unknown, that the Lenders may have as to any person or entity other than the Debtor including, without limitation, the guarantors of the Prepetition Indebtedness. Each of the parties, including the Lenders, in whatever capacity, reserves all rights, remedies and interests that he, she or it has or have or may have under agreements, documents or circumstances other than the Financing Documents.

18. All parties-in-interest shall have until January 24, 2012, (the "**Review Period**") to review the Financing Documents and any actions or conduct of the Lenders and the Debtor. If, during the Review Period, such parties do not file an objection or other pleading with the Court (a) contesting in whole or in part the validity, perfection, priority and enforceability of the liens and security interests claimed by the Lenders in and to the Collateral or (b) asserting any claim or cause of action against either of the Lenders, or their agents, whether arising under applicable state or federal law, or the Bankruptcy Code, whether arising in connection with the Prepetition Indebtedness, the Financing Documents or otherwise, all such parties shall thereafter be forever barred from asserting or contesting any of the matters set forth in (a) and (b) above and the Senior Lender shall be deemed to hold allowed, perfected, enforceable and non-avoidable secured interests in the Collateral and the Junior Lender shall be deemed to hold allowed, perfected, enforceable and non-avoidable secured interests in the Junior Collateral.

19. In light of the stipulations of the parties as set forth above, the Court finds that the Lenders have acted in "good faith" in all respects within the meaning of Section 363(m) of the Bankruptcy Code and on terms as would otherwise be found in an arm's length transaction. In the event of any appeal of this Final Order, the Lenders shall be entitled to the benefits of section 363(m) of the Bankruptcy Code with respect to any Cash Collateral used by the Debtor, unless the party to such appeal shall have obtained a stay of this Final Order pursuant to the Bankruptcy Code and the applicable Bankruptcy Rules.

20. In accepting the Budget, in making decisions to release Cash Collateral and by taking any other actions pursuant to this Final Order, subject to entry of a final order the Lenders shall have no liability to any third party, and neither Lender shall be deemed to be in control of the operation of the Debtor or acting as a "responsible person," "owner" or "operator" with respect to the operation or management of the Debtor. No third party is intended to be or shall be deemed to be a third party beneficiary of the provisions of this Final Order.

21. The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated as to the Lenders to the extent necessary to implement the terms of this Final Order and to permit the Lenders to implement the provisions hereof, including, without limitation, permitting the Lenders, as appropriate, inter alia, (a) to receive and apply collections, payments or proceeds of Collateral, (b) to file any financing statements or other instruments and documents, if any, evidencing its security interests in and liens and mortgages on the Collateral and (c) to charge any fees as provided in paragraphs 6, 9 and 10.

22. In addition to the inspection of records permitted by the Financing Documents, the Debtor shall allow the Lenders to review and copy, upon prior written request with five (5) days written notice, (i) all vouchers, invoices, contracts and other writings relating to any and all

disbursements made or obligations incurred by the Debtor with respect to the maintenance and operation of its businesses and (ii) any and all other books and records of the Debtor pertaining to the Debtor's use of the Cash Collateral.

23. On a weekly basis (commencing on the first Monday after the date of entry of this Final Order), the Debtor shall also provide evidence of the invoicing of new receivables in accordance with the Budget.

24. Upon five (5) business days' prior notice by telecopy or courier, the Debtor shall permit representatives, agents and/or employees of either of the Lenders to visit, inspect, have reasonable access to and consult with, as the case may be, (i) the Debtor's books and records, (ii) the personnel of the Debtor who are familiar with the Debtor's books and records or the information set forth therein, and (iii) such other information as such Lender may reasonably request, and shall cooperate and consult with, and provide to such representatives, agents, and/or employees all such information as they may reasonably request.

25. This Final Order shall be without prejudice to any further application by either the Senior Lender or the Debtor for other or further adequate protection or relief, or any rights, claims or privileges of any kind, or further use of Cash Collateral, respectively.

26. This Court shall retain jurisdiction to enforce, modify, extend or interpret this Final Order.

27. Nothing herein shall alter, modify, affect, impair, or otherwise prejudice the rights that the Senior Lender or Junior Lender may have under the terms of the Subordination Agreement.

28. A further hearing, if necessary, with respect to the Debtor's continued use of cash collateral will be held on _____, 2012 at ____ a.m./p.m.

29. This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof.

Dated: This _ day of _____ 2011
Wilmington, Delaware

_____
Brendan Linehan Shannon
United States Bankruptcy Judge

AGREED TO:

DLA PIPER LLP (US)                                    THORP REED & ARMSTRONG

_____                           _____
Stuart M. Brown (#4050)                               Jeffrey M. Carbino
Cynthia Moh(#5041)                                    824 N. Market Street
919 N. Market Street, 15th floor                      Suite 710
Wilmington, DE 19801                                  Wilmington, DE 19801
Telephone: 302.468.5640                               Telephone: 302.250.4750
Facsimile:                                            Facsimile: 302.421.9439
Stuart.Brown@dlapiper.com                             jcarbino@thorpreed.com
Cynthia.Moh@dlapiper.com

-and-                                                 *Counsel to Ocimum
                                                      Biosolutions, Inc.*
Richard M. Kremen
Jodie E. Buchman                                      DEWEY & LEBOEUF LLP
6225 Smith Avenue
Baltimore, Maryland 21209
Telephone: 410.580.3000
Facsimile: 410.580.3001                               _____
Richard.kremen@dlapiper.com                           Jeffrey Chubak
Jodie.buchman@dlapiper.com                            1301 Avenue of the Americas
                                                      New York, NY
*Counsel to SunTrust Bank*                            Telephone: (212) 259-8179
                                                      Facsimile: (212) 259-6333
                                                      Jchubak&deweyleboeuf.com

Cash Collateral Budget October 29 - November 30

| Description | October 29 2011 | November 5 2011 | November 12 2011 | November 19 2011 | November 26 2011 | December 3 2011 | December 10 2011 | December 17 2011 | December 24 2011 | December 31 2011 | January 6 2012 | January 13 2012 | January 20 2012 | January 27 2011 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Opening Cash | 16,500.00 | 73,182.17 | 99,576.97 | 199,988.59 | 109,759.20 | 86,955.18 | 244,729.26 | 206,816.34 | 142,908.84 | 243,072.92 | 265,072.92 | 133,878.92 | 96,478.92 | 149,478.92 | 16,500.00 |
| **CASH RECEIPTS** | | | | | | | | | | | | | | | |
| Total Cash Receipts | 56,682.17 | 26,394.80 | 198,637.23 | 57,152.75 | 145,488.98 | 429,701.00 | 69,277.00 | 109,092.50 | 167,687.00 | 125,000.00 | 50,000.00 | 50,000.00 | 150,000.00 | 50,000.00 | 1,685,113.43 |
| **CASH DISBURSEMENTS** | | | | | | | | | | | | | | | |
| Total Cash Disbursements | - | - | 98,225.61 | 147,382.14 | 168,293.00 | 271,926.92 | 107,189.92 | 173,000.00 | 67,522.92 | 103,000.00 | 181,194.00 | 87,400.00 | 97,000.00 | 83,000.00 | 1,585,134.51 |
| Ending Cash | 73,182.17 | 99,576.97 | 199,988.59 | 109,759.20 | 86,955.18 | 244,729.26 | 206,816.34 | 142,908.84 | 243,072.92 | 265,072.92 | 133,878.92 | 96,478.92 | 149,478.92 | 116,478.92 | 116,478.92 |

| Accounts Receivable | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | 387,198.70 | 418,565.22 | 392,170.42 | 450,883.19 | 697,961.44 | 680,159.46 | 375,458.46 | 431,181.46 | 402,088.96 | 274,401.96 | 199,401.96 | 149,401.96 | 249,401.96 | 99,401.96 | 387,198.70 |
| Less - collections - Existing A/R | (11,549.17) | (26,394.80) | | | | (22,415.00) | | | | | | | | | (368,740.83) |
| + New Invoicing - WIP | 88,048.69 | | 82,350.00 | 54,231.00 | 127,887.00 | 75,000.00 | 75,000.00 | 40,000.00 | | | | | | | 542,316.69 |
| Less - collections - WIP | (45,033.00) | | | (17,997.00) | | (32,286.00) | (19,277.00) | (59,092.50) | (127,887.00) | (75,000.00) | (50,000.00) | | | | (376,372.50) |
| Ending Balance | 418,565.22 | 392,170.42 | 450,883.19 | 697,961.44 | 680,159.46 | 375,458.46 | 431,181.46 | 402,088.96 | 274,401.96 | 199,401.96 | 149,401.96 | 249,401.96 | 99,401.96 | 99,401.96 | 199,401.96 |

Explanation of Accounts Receivables

Existing Account Receivables
In House projects/WIP
New Pos/Invoices